43    93
30a 381
43b  93
37a 159

## Oscar Skidmore v. The State.

1. Assault by officer on a prisoner.—An officer when conveying a prisoner to jail, though justifiable in using such force as may be necessary to carry him, is guilty of an offense if he strike him except in his own necessary self-defense.

2. CHARGE OF COURT.—On the trial of one charged with an aggravated assault committed with a pistol, the jury propounded the following question to the court: "Is a pistol a deadly weapon, the size not known, and not known whether empty or loaded?" To which the presiding judge answered: "A pistol is a deadly weapon:" *Held*, 1st. That whether it was or was not a deadly weapon must depend either on its size or the manner of its use. 2d. That the answer was error, being calculated to injure the rights of the defendant in taking away from the jury the determination of a material fact in the case as presented by the evidence. 3d. That a fine of one hundred dollars could not be held good as a fine for a simple assault, since the verdict was consistent with guilt of a higher grade of offense, and might have been fixed at a less amount, but for the erroneous answer of the judge.

APPEAL from Collin. Tried below before the Hon. Silas Hare.

*Craig & Garnett*, for appellant.

*A. J. Peeler, Assistant Attorney General*, for the State.

ROBERTS, CHIEF JUSTICE.—The indictment charges the defendant with having committed an aggravated assault and battery upon one McCautz, by striking him with a pistol and inflicting upon him a serious injury.

The evidence showed that McCautz was drinking, and at Turbitt's grocery, in the city of McKinney, and wishing to go out at the rear door, he asked Skidmore, the defendant, who was there playing billiards, (being a deputy marshal and policeman,) to open the door. Skidmore told him to open it himself, and went out of the front door; after which McCautz cursed him, for which Turbitt ordered him out of his house, and while in the act of forcibly putting him out McCautz attempted to strike him, about which time Skidmore, coming along the street, stepped in the house and told McCautz to go along with him, that he, defendant, would arrest him. McCautz refusing to go, was dragged out into the street by Skidmore and Turbitt, and being carried on some distance towards the calaboose

by Skidmore, stopped and said he wanted to go to see some one to stand on his bond, or to get money to keep him out of the calaboose, refusing to go any further. Thereupon Skidmore put his hand behind him, pulled out his pistol, a six or a five-shooter, and struck McCautz on the head with it, cutting a gash an inch long, drawing blood, when McCautz went on with him, was put in the calaboose, and was afterwards fined, for what offense does not appear. When Skidmore struck him with a pistol there were two men within the distance of eighty-four feet from him, upon whom he could have called for assistance to carry the drunken man to prison.

The code provides that in making an arrest no greater force shall be resorted to than is necessary to secure the arrest and detention of the accused. (Paschal's Dig., art. 2697.) An officer on board of a man-of-war, in a storm or in a battle, may be justified in enforcing his orders by striking a sailor with a pistol, when necessary to make him go, if he stops and refuses to go in the discharge of his duty.

The laws of Texas do not fix the relations as to the right of command and the duty of obedience to orders of a deputy marshal of a quiet country town in time of peace, and a drunken prisoner in his custody, upon the same footing with an officer in the navy and a sailor under him, in a storm or in a battle. The officer, if he had a right to arrest and carry him to the calaboose, may have the right to use him roughly, if necessary, in the act of carrying him along, and he had a right to get assistance in doing so, if he needed it; but that does not embrace the right to punish him, to assault and beat him with a pistol to make him or to induce him to go when he stopped. There is a very broad distinction between the two means of getting the prisoner to the calaboose.

This is the distinction sought to be drawn by the court in the charge, which says that "an officer who has charge of a prisoner may, as stated, use all reasonable means to

secure his detention, but in no case is he justified in committing an assault and battery upon such person, unless in his own defense to resist unlawful violence attempted to be used by the prisoner upon him." This is objected to strenuously, because the words assault and battery, as used here, are not used in their legal sense, but in the sense of beating or striking. It is hardly possible that the jury could have misunderstood its meaning, considered in connection with the balance of the charge.

There are several other questions of importance presented in this case. What authority had Skidmore for arresting McCautz if he was not a sworn officer of the city and State? (See Art. VII General Provisions of the Constitution, sec. 1.)

What offense had McCautz committed, that he must be dragged forthwith to the calaboose, and not be carried before the mayor to at once answer for it? (See Paschal's Dig., arts. 2679, 2682.) It is not necessary, however, to further notice these questions.

The jury, it seems, upon their retirement, met with a serious difficulty in the case, because no witness had expressly stated what was the size or weight of the six or five-shooting pistol with which McCautz was stricken, although it was proved to have cut a gash on his head an inch long by one blow, and they came into court and asked the judge the following question:

"Is a pistol necessarily a deadly weapon, the size not known, and not known whether empty or loaded?" Whereupon the court instructed them as follows: "A pistol is a deadly weapon;" to which the defendant, by his counsel, excepted.

This charge, so far as it is an answer to the question of the jury, implies that all pistols are deadly weapons, however used. This is not correct, either as matter of law or of fact. Whether a pistol is a deadly weapon, when used to strike with as a club or stick, must depend upon its size

or weight, in connection with the manner of its use, and the part of the person that is stricken with it. A deadly weapon is defined to be "one likely to produce death or great bodily injury." A pistol used to strike with is nothing more than a piece of iron of the same size, weight, and shape. There may be five or six-shooting pistols so small that they would not, when so used, be likely to produce death or serious bodily injury. The indictment alleged this pistol to be a deadly weapon. The evidence of its being so was that it was a six or five-shooter, and that it cut a gash an inch long on McCautz's head. This might seem to be sufficient evidence to establish that fact. But the jury was in doubt about it, and the judge cleared away their doubts by making the size of the pistol and the injury done by it immaterial facts, in drawing their conclusion as to whether it was a deadly weapon or not, by giving them the rule to act upon that if it was a pistol it was a deadly weapon, and that, it is fair to presume, decided the case. In this we think the court erred, and that it was an error calculated to injure the rights of the defendant, by taking away from the jury the determination of a material fact in the case as presented by the evidence.

It is contended by the attorney general that, as the defendant was found guilty generally, and fined one hundred dollars, the conviction may be held good for an assault and battery only, as for that minor grade they could have fined him that amount.

The objection to this is, that if they had not been constrained by this charge to find him guilty of the higher offense, with which their finding is entirely consistent, they might have assessed his fine at less than one hundred dollars.

We are of opinion that the judgment must be reversed, and the cause be remanded.

REVERSED AND REMANDED.